ROBERT W. BEIRN AND MARY BEIRN, HIS WIFE, PLAIN-
TIFFS-APPELLANTS, v. AUGUST N. MORRIS, BUILDING
INSPECTOR OF THE TOWNSHIP OF PISCATAWAY, AND
BOARD OF ADJUSTMENT OF THE TOWNSHIP OF
PISCATAWAY, IN THE COUNTY OF MIDDLESEX, DE-
FENDANTS-RESPONDENTS.

Argued February 8, 1954—Decided March 8, 1954.

*Mr. Joseph J. Mutnick* argued the cause for appellants.

*Mr. John T. Keefe* argued the cause for respondents.

The opinion of the court was delivered by

HEHER, J. In this proceeding in lieu of the prerogative writ of *certiorari,* to review a resolution adopted January 22, 1953 by the defendant board of adjustment refusing the plaintiff landowners a variance under *R. S.* 1937, 40:55–39(c), as amended, from the terms of a local zoning regulation forbidding the particular use, there was judgment of affirmance, which also adjudged "valid" the zoning regulation itself, "in so far as it relates to the property of plaintiffs."

The case is here on our own certification of the landowners' appeal to the Appellate Division.

At base, the grievance asserted is that the challenged local action was arbitrary and unreasonable and a "practical con-

fiscation" of plaintiffs' lands. It is said, in a word, that plaintiffs sustained the onus of proof of the "extraordinary and exceptional situation or condition" of the particular plot that would entail "peculiar and exceptional practical difficulties" or "exceptional and undue hardship" to the landowners were the regulation to be strictly enforced, relievable without "substantial detriment to the public good" or "impairment" of the "intent and purpose of the zone plan and zoning ordinance," and so the standard of action laid down in the cited section 40:55-39(c) is met.

The *locus* is at the northeast corner of West Seventh and Walnut Streets, and is designated on the township tax map as Lot 43, in Block 45. Walnut Street intersects West Seventh Street at an angle of almost 45°, and all abutting lots, including plaintiffs', extend from Walnut Street at right angles, thus making for varying side lines. Plaintiffs' parcel has a diagonal frontage of 101.91 feet on the northerly side of Walnut Street; its northerly side has a depth of 275 feet, running at a right angle from West Seventh Street; its southerly side has a parallel depth of 211.87 feet, and there is a uniform width of 80 feet throughout the latter depth. There is no street parallel to Walnut Street. Plaintiffs acquired the lot by purchase on August 4, 1952, intending to erect thereon a cinder block garage, 20 feet high, for the housing of 12 buses employed in the performance of existing contracts for the transportation of children to the township's Arbor School and New Market School. But the lot was then, to plaintiffs' knowledge, and is now, situate in a Residence "B" zone delineated by the ordinance, closed to such use. Plaintiffs acquired the land believing, after consultation with "several of the neighbors," that there would not be neighborhood objection to such use.

The ordinance establishes a minimum lot size of 50 ft. x 100 ft.; plaintiffs' lot is 80 ft. x 200 ft., or more; and a master plan is now in process of formulation by the local planning authority which will provide for the upgrading of the subject Arbor section as a residence area, by means, *inter alia*, of a minimum lot size mandate of 75 ft. x 100 ft.,

or 7,500 square feet for the individual lot, "to avoid over-crowding conditions and difficulty with sanitary facilities," and a revision of the zoning ordinance in keeping with the altered concepts of socio-economic needs and use policy.

We do not find the particular zoning regulation in the appendix. But we have the unchallenged statement in the landowners' brief that under the ordinance a "B" Residence zone "may be used for no other purposes than single-family detached dwellings, non-business clubs and lodges, educational and religious uses, excluding hospitals and sanitariums, except where authorized by the special exception of the Board of Adjustment, and for farms, nurseries or green-houses." And the brief submitted by the defendant local authority affirms without exception that in zones of this class the ordinance "prohibits a garage, and the use of lots for garage purposes."

These are the circumstances advanced in support of the basic contention that "exceptional and undue hardship" would attend the strict application of the general regulation: Next door, on the northerly side, is the Arbor Fire House and Arbor Rescue Squad building; there is a "combination" gasoline station and confectionery store at the northeast corner of Walnut and West Seventh Streets, and a "combination" garage and gasoline station on the southeast corner of the intersection, in each instance a nonconforming use; there is a one-family dwelling on the southwest corner, "fronting Walnut Street and facing north, away from the intersection"; the existing dwellings are "staggered along Walnut Street in order to be parallel to the side of the lot (and consequently not parallel with the street)," and the "result is that should plaintiffs erect a residence maintaining the same set back, they would be looking out of their dwelling at the middle or toward the rear of the fire house and, because of the peculiar angle of the intersection, facing the gas station on either corner across the way," and "any house not built in line with the peculiar set back and pattern of the street would not only stand out like a sore thumb but would unfavorably affect the looks of the neighborhood":

this from the testimony of a real estate broker who is also chairman of the Board of Adjustment of Plainfield, a witness called by plaintiffs. Another of plaintiffs' witnesses, a real estate broker of wide experience in the Plainfield area, testified that the lot in question is not "suitable or desirable for residential purposes." And these were his reasons: The location of "a rescue squad and fire house immediately next door to it, which buildings are utilized at any hour of the day or night"; "Also the fact that there is a siren on top of the fire house, plus the fact that immediately across the street—practically regardless of how you sit, that is, regardless of how you put your house on this lot—you cannot help but see the Esso gasoline station and Tydol gasoline station and a small one story building servicing that Tydol station which appears to be somewhat of a store," and "In addition to that, a garage beyond the Esso station; all of which is certainly not conducive to residential building." He drew support for this conclusion from the fact that "the lot has been unused for a great many years." He observed that while most of the area "was built up in the middle '20s and the fire house was built roughly in the early '30s," and "there has been a lot of building since then," there has been "very little building right around that fire house for residential purposes." He added that "the highest and best use for this particular piece of ground is commercial, commercial of the automotive variety, either a new car agency or a repair garage or a combination of repair and a gasoline station because there is considerable traffic in that area," but a "storage garage such as is proposed here is probably the best that could be hoped for of that particular variety."

These considerations are manifestly insufficient for the exertion of the statutory power to vary the terms of the general regulation. The landowners acquired the property fully cognizant of the use restrictions, avowedly to make a more profitable use of the lands than conformance to the use regulation would permit, if that could be accomplished—such as would serve their own private business interests at the time; and the profit motive is not an adequate ground

for a variance. *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Scadulo v. Bloomfield*, 127 *N. J. L.* 1 (*Sup. Ct.* 1941); *National Lumber Products Co. v. Ponzio*, 133 *N. J. L.* 95 (*Sup. Ct.* 1945); *Garden View Homes, Inc. v. Board of Adjustment of Passaic*, 137 *N. J. L.* 44 (*Sup. Ct.* 1948); *Protomastro v. Board of Adjustment of the City of Hoboken*, 3 *N. J.* 494, 495 (1950); *Lumund v. Board of Adjustment of the Borough of Rutherford*, 4 *N. J.* 577 (1950). And in the evaluation of a claim of undue hardship, the purchase of the land after the adoption of the regulation is a ´circumstance to be considered. *Aschenbach v. Plaintiff*, 121 *N. J. L.* 598 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 265 (*E. & A.* 1939). See, also, 168 *A. L. R.* 45.

It is basic in the statutory zoning process that the use restrictions be general and uniform in the particular district; an arbitrary deviation from the general rule is inadmissible. It is of the very nature of the constitutional and statutory zoning principle that all property in like circumstances be treated alike. The zoning power may not be exerted in the service of private interests under the cloak of the public good. The variance provided by subdivision (*c*) of the cited section of the Zoning Act, *R. S.* 1937, 40 :55–39, as amended, affords the means of relief where a particular lot is so uniquely circumstanced as that the application of the general rule of the ordinance, according to the strict letter, would result in "peculiar and exceptional practical difficulties" or "exceptional and undue hardship," so as to accommodate fundamental common and individual rights in the service of the essential statutory policy, and thus to avoid an arbitrary and capricious interference with the right of private property. The inquiry is whether the use restriction, viewing the property in the setting of its environment, is so unreasonable as to be confiscatory. A "variance" for undue hardship is grounded in conditions peculiar to the particular lot as distinguished from other property in the use district. General hardship is relievable only by a revision of the general rule of the ordinance, a local legislative process, or

by the judicial process. *Brandon v. Montclair*, cited *supra; Protomastro v. Board of Adjustment of the City of Hoboken,* cited *supra; Schmidt v. Board of Adjustment, Newark,* 9 *N. J.* 405 (1952) ; *V. F. Zahodiakin Engineering Corp. v. Board of Adjustment, Summit,* 8 *N. J.* 386 (1952).

■ Here, the land is reasonably usable for residence purposes. It is of no significance on this inquiry that it has not been devoted to such use. There is no contention that the general regulation is arbitrary or unreasonable. And the lot is not uniquely circumstanced. The asserted unfavorable factors and disadvantages are plainly not peculiar to this parcel; the adjacent dwellings are similarly affected; they have the same oblique placement which plaintiffs deem insuperable. Plaintiffs would have resort to the "spot" zoning that debilitates and destroys.

■ A "variance" from the general regulation is permissible only in rare instances and under exceptional circumstances. This is of the very essence of the zoning process— an attribute indispensable to its integrity. Relaxation of the general rule is to be had only for the relief of specific instances, peculiar in their nature. The community-at-large as well as individual landowners in the particular use district has an interest in the security of the zone plan that may not be arbitrarily set at naught. *Potts v. Board of Adjustment of Princeton,* 133 *N. J. L.* 230 (*Sup. Ct.* 1945) ; *Lynch v. Hillsdale,* 136 *N. J. L.* 129 (*Sup. Ct.* 1947), affirmed 137 *N. J. L.* 280 (*E. & A.* 1948).

■ The nonconforming uses do not justify the variance sought. If the rule were otherwise, one variation would sustain if it did not compel others, and thus the general regulation would in time be rendered abortive. *Scaduto v. Bloomfield,* cited *supra; Berry v. Recorder's Court of West Orange,* 124 *N. J. L.* 385 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 273 (*E. & A.* 1940). A variant use of plaintiff's lands would necessarily be the basis for others and thus the disintegrating process would be set in motion. The neighborhood attitude is of no consequence; zoning also serves the public-at-large.

By an amendment of subsection (*c*) adopted July 27, 1953, after the adverse action taken by the board of adjustment, this proviso was appended, a significant formalized restriction upon the power to grant a variance: *"provided, however*, that no variance shall be granted under this paragraph to allow a structure or use in a district restricted against such structure or use."

The introducer's explanatory statement declares that "there is considerable confusion throughout the State with respect to the powers of the boards of adjustment as set forth in Revised Statutes, section 40:55–39, particularly concerning paragraphs c and d of the section," and the purpose of the proposed amendment "is to clarify such powers," a measure "endorsed," it is said, by the New Jersey State League of Municipalities, the New Jersey Institute of Municipal Attorneys and the New Jersey Federation of Official Planning Boards.

It suffices to say in this regard that here the action of the board of adjustment is invulnerable, measured by the standard of subsection (*c*) as it then was; and we have no occasion to assess the determination in the light of the amendment of 1953, a restrictive rather than a mitigative clarification. And, in view of the issue made below and the relief there asked, not to mention the ground of this decision, we have no reason to consider the amended subdivision (*d*) of the cited section 40:55–39, as suggested by plaintiffs for the first time in their reply brief.

Plaintiffs complain that the evidence on the merits adduced before the local authority was supplemented in the Superior Court, and thus the issue determinable only by the administrative agency was reviewed by the court on a new factual showing. Even so, there was no prejudice, for plaintiffs did not, by the proofs made before the local body, establish their claimed right to a variance. But we take occasion to reiterate the oft-repeated admonition that this power is committed by the statute to the expert discretion of the local administrative authority, and that judicial interference is permissible only for relief against arbitrary or

capricious action that constitutes an abuse of the delegated discretion, and the judicial authority may not exercise anew the statutory jurisdiction and substitute its own independent judgment for the specialized judgment of the agency entrusted by the Legislature with the administrative function. *Brandon v. Montclair,* cited *supra; Schmidt v. Board of Adjustment of Newark,* cited *supra; In re Plainfield-Union Water Co.,* 14 N. J. 296, 308 (1954). We do not suggest that these considerations would apply where the evidence taken on the judicial inquiry was simply to settle the record actually made before the administrative body, the record upon which the determination under review was in fact made.

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, WACHENFELD, BURLING and JACOBS—5.

*For reversal*—None.