GEORGE A. DOLAN, ALICE DOLAN, HIS WIFE, ARCHIE H. ORMOND AND HELEN R. ORMOND, HIS WIFE, PLAINTIFFS-RESPONDENTS AND CROSS-APPELLANTS, v. MICHAEL DeCAPUA, HELEN DeCAPUA, HIS WIFE, DEFENDANTS-RESPONDENTS AND CROSS-APPELLANTS, AND ROBERT T. WHITE, BUILDING INSPECTOR OF THE CITY OF EAST ORANGE, THE BOARD OF ADJUSTMENT OF THE CITY OF EAST ORANGE AND THE CITY COUNCIL OF THE CITY OF EAST ORANGE, DEFENDANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued November 15, 1954—Decided December 6, 1954.

601

*Mr. Archie H. Ormond* argued the cause for the plaintiffs-respondents and cross-appellants (*Messrs. Ormond & Dippel,* attorneys).

*Mr. Vincent P. Biunno* argued the cause for the defendants-respondents and cross-appellants, Michael and Helen De-Capua (*Messrs. Lum, Fairlie & Foster,* attorneys).

*Mr. Walter C. Ellis* argued the cause for the defendants-appellants and cross-respondents (*Mr. Donald Karrakis,* of counsel).

The opinion of the court was delivered by

BURLING, J.   This appeal arises from a civil action, in lieu of prerogative writ, in the Superior Court, Law Division,

brought principally to test the validity of a zoning variance. George A. Dolan, Alice Dolan, his wife, Archie H. Ormond and Helen R. Ormond, his wife (hereinafter referred to as the plaintiffs) instituted the action against Michael DeCapua and Helen DeCapua, his wife (hereinafter referred to as the DeCapuas) and against Robert T. White, Building Inspector of the City of East Orange, The Board of Adjustment of the City of East Orange and The City Council of the City of East Orange. The variance subjected to this suit related to the use of a six-car garage on the DeCapuas' property. From the judgment of the Superior Court, Law Division, appeal by the defendants building inspector, board of adjustment and city council, cross-appeal by the plaintiffs and cross-appeal by the defendants DeCapua were taken to the Appellate Division of the Superior Court. Prior to hearing there, certification of all three appeals was allowed on our own motion.

Many of the facts in this case were stipulated; other facts are found uncontroverted in evidence introduced by consent on the trial of the action. At the times covered by the sequence of events involved in this matter the plaintiffs and the DeCapuas resided in residences fronting on Warrington Place in the City of East Orange, New Jersey. The testimony and the zoning maps in evidence disclose Warrington Place to be a street running only from North Grove Street on the West to North 19th Street on the east. Warrington Place is not intersected by other streets and its length is approximately 1200 feet.

In December 1949 the building inspector of the City of East Orange issued a permit for the erection of a six-car garage on DeCapuas' property, upon which there then existed a "very large" residence and a two-car garage. The new garage was erected, being completed on or about January 14, 1950.

On or about April 24, 1950 the plaintiffs appealed to the board of adjustment to review the issuance of the building permit. A hearing was held on May 18, 1950 at which testimony was taken and exhibits were offered and received

in evidence. On May 31, 1950 the board of adjustment dismissed the plaintiffs' appeal. The plaintiffs, about June 14, 1950, instituted a civil action in lieu of prerogative writ in the Superior Court, Law Division. They sought thereby the invalidation of the building permit and sought a judgment requiring the removal of the DeCapuas' six-car garage. That action subsequently terminated in a judgment reversing the determination of the board of adjustment and voiding the building permit, but removal of the garage was not required by the judgment. *Dolan v. DeCapua*, 13 *N. J. Super.* 500 (*Law Div.*, 1951). No appeal was taken from that judgment.

The use of the six-car garage intended by DeCapuas, and effected by them for a portion of the time elapsed between the completion of it and the institution of the present proceedings, was the housing of flower cars used for funeral processions, and limousines used by the DeCapuas for transporting persons in connection with funerals and wedding processions. In December 1949 the existing zoning ordinance, pertinent provisions of which originated as far back as 1921, established the properties fronting on Warrington Place as a "small volume residence" zone. Properties at the corners of Warrington Place and North Grove Street, and Warrington Place and North 19th Street were in a "medium volume residence" zone which surrounded this Warrington Place zone on three sides (east, north and west) with the exception of a corner to the northeast (namely, the southwest corner of Fourth Avenue and North 19th Street) which was zoned for "medium volume business." The Warrington Place zone was bounded on the south by properties fronting on the north side of Park Avenue, then in a "large volume residence" zone extending for many blocks along both sides of Park Avenue. A Park Avenue apartment house, with a rear parking lot for tenants, existed in this "large volume residence" zone, immediately to the rear of the DeCapuas' Warrington Place property. The zoning ordinance existing in 1949 authorized private garages as accessory uses in the Warrington Place zone, and limited construction and use of such garages as follows:

"\* \* \* A private garage to be deemed an accessory use shall not provide storage for more than one motor vehicle for each 2,000 feet of ground area of the lot, and of which not more than one vehicle may be a commercial motor vehicle of not more than two tons capacity. Space for not more than two non-commercial vehicles may be leased. \* \* \*"

There is uncontradicted evidence that the DeCapuas' lot was of adequate size to justify garage space for eight vehicles under the terms of the ordinance as above quoted. The invalidation of the building permit in the prior action was not premised upon violation of the ordinance by the structure but was premised upon use violation. Judge Daniel J. Brennan in the prior action held: "The maintenance of a garage housing limousines, used for hire and licensed as auto-cabs or omnibuses, is neither an 'accessory use' nor a use 'customary or incident' to a one-family housing accommodation" (13 *N. J. Super.*, at *p.* 508), and "Since the use of the new garage is not one customarily incident to the occupation of a single-family residence it falls within the prohibition of the ordinance." (13 *N. J. Super.*, at *p.* 509). Although the area was zoned for single-family residences, professional offices, clubs, churches, convents, schools, libraries, museums, and memorial buildings were permitted, as well as "boarding and the renting of furnished rooms." Dwellings at Nos. 9, 24, 37 and 40 Warrington Place were licensed rooming houses. No. 84 Warrington Place was a convent. The plaintiffs Dolan resided at No. 73 adjoining No. 81, the DeCapuas' property. The plaintiffs Ormond resided at No. 64, diagonally (to the northwest) across the street from the Dolans' property.

After the decision (May 24, 1951) and judgment of the Superior Court, Law Division, entered on June 5, 1951, in the prior suit, DeCapuas' use of the garage "lessened." However, by August 1952 it appears to have been resumed to some extent. On August 6, 1952 Mr. Ormond wrote Michael DeCapua, requesting him "to conform to the judgment and the ordinance." Michael DeCapua testified that

he removed all but two of the vehicles from the garage and kept them out until he obtained a certificate of occupancy in 1953.

In the interim Ordinance No. 15 of 1951 was enacted (effective October 25, 1951) in East Orange. This was a revision of the zoning regulations of that municipality. With respect to the areas hereinbefore described the sole change in classification was the rezoning of the adjacent Park Avenue area from "large volume residence" to "medium volume residence." The zoning regulations for "small volume residence" zones were changed, however, eliminating boarding and lodging as a permitted use and restricting more closely the construction and use of private garages.

Michael DeCapua on or about September 22, 1952 applied to the board of adjustment for a variance to permit use of the six-car garage "for the accommodation of six motor vehicles." The board of adjustment by resolution of October 16, 1952 declared that "exceptional and undue hardship upon the owner" existed and recommended a variance. The city council by resolution of December 8, 1952 approved the recommendation by a vote of 6 to 3 (one member being absent) but its action was vetoed on December 17, 1952 by Mayor Martens. The veto was not overridden.

In February 1953 Michael DeCapua filed a new application for variance with the board of adjustment. This application was more specific, seeking permission to use the six-car garage "for the accommodation of certain motor vehicles, being limousines and flower cars, which motor vehicles are for hire, the former for the transportation of persons and the latter for the carrying of flowers and floral arrangements." On April 9, 1953 the board of adjustment unanimously adopted a resolution recommending to the mayor and city council the grant of a variance for this use. The city council on May 11, 1953 approved the variance, but on May 20, 1953 the mayor, William M. McConnell, vetoed the action. The city council on May 25, 1953 passed a further resolution overriding the mayor's veto by a vote of 9 to 1. On May 26, 1953 the building inspector issued to Michael

DeCapua a certificate of occupancy for use of the six-car garage for storage of limousines and flower cars.

The plaintiffs on July 2, 1953 filed their complaint in the present action. They sought therein the following relief: (a) voiding of the resolution of the board of adjustment of April 9, 1953 and of the resolutions of the city counsel of May 11 and May 25, 1953; (b) voiding of the certificate of occupancy issued May 26, 1953; (c) injunction—restraining DeCapuas "from using the said six-car garage for the storage or housing of motor vehicles for hire or otherwise;" (d) injunction—restraining the DeCapuas from using any part of their premises for "storage either housed or unhoused of motor vehicles for hire and from using * * * any part thereof, for the storage or housing of more than three motor vehicles"; (e) removal of the six-car garage building; (f) damages; and (g) judgment requiring the defendant municipal officials to enforce the East Orange zoning ordinance against the DeCapuas.

The pretrial order limited the issues to the issues of the validity of the resolutions of the board of adjustment and the city council, and the issue of damages allegedly suffered by the plaintiffs. In despite of the limitation of the issues by the pretrial order the parties and the court proceeded with the trial of all the issues raised in the pleadings. Compare *R. R.* 4:15–2, formerly *Rule* 3:15–2.

The Superior Court, Law Division, in the present action refused to grant the plaintiffs' prayer for removal of the structure in question. During the course of the trial of the present action Judge Daniel J. Brennan ruled, with plaintiffs' agreement, that proceedings to judicially require the municipal officials to enforce the zoning ordinance were premature. However evidence was permitted to be introduced relative to the issue of damages and as to the plaintiffs' alleged right to injunction against the DeCapuas. The Superior Court, Law Division, entered judgment invalidating and setting aside the resolution of "April 18, 1953" (the correct date is April 9, 1953) of the board of adjustment recommending the variance, the resolutions of May 11, 1953

and "May 20, 1953" (the correct date is May 25, 1953) of the city council approving the variance, and the certificate of occupancy issued by the building inspector on May 26, 1953. No further adjudication was expressed in the judgment.

The municipal authorities appealed, the plaintiffs cross-appealed "* * * from the failure of the Trial Judge * * * to grant to * * * plaintiffs relief by way of restraint, injunction and damages * * *," and DeCapuas cross-appealed from so much of the judgment as set aside the resolutions of the board of adjustment and city council and the certificate of occupancy. As hereinbefore noted, the appeals were addressed to the Superior Court, Appellate Division, and were certified on our own motion prior to hearing there.

The questions involved include: whether (a) the Superior Court, Law Division, properly set aside the resolutions of the board of adjustment and city council, and the certificate of occupancy; (b) the trial court erred in permitting the introduction of evidence which was not introduced before the board of adjustment; (c) the trial court should have granted the additional relief sought by the plaintiffs (*i. e.*, restraints against the DeCapuas, removal of the building, judgment requiring the city officials to enforce the zoning ordinance, and damages).

I

The first question involved is whether the trial court erred in setting aside the variance (*i. e.*, in vacating the resolutions of the board of adjustment and the city council). We find no error therein.

■ The decision of the Superior Court, Law Division, in the prior litigation was premised solely on use, as hereinabove detailed. There has been no adjudication dispositive of the question whether the structure was violative of the zoning ordinance existing in 1949 and 1950. The pertinent zoning provisions then obtaining clearly authorized the construction of the building. The use, however, is another matter

and the prior decision of the Superior Court, Law Division, on May 24, 1951 (judgment entered June 5, 1951) is *res adjudicata* thereon. By virtue thereof the construction of the then existing zoning regulations against the DeCapuas' contentions as to use must stand.

The variance subjected to the present litigation was addressed solely to use. It was sought under *R. S.* 40:55–39(*d*), as amended by *L.* 1948, *c.* 305, *sec.* 6 and by *L.* 1949, *c.* 242, *sec.* 1. The grant of variance was premised upon special reasons, alleging exceptional and undue hardship to the owners, the DeCapuas, which was a ground for variance under *R. S.* 40:55–39(*d*), as amended, *supra*, as construed in *Monmouth Lumber Co. v. Ocean Township*, 9 *N. J.* 64, 77 (1952) and in *Ward v. Scott*, 11 *N. J.* 117, 122 (1952). *Cf. R. S.* 40:55–39, *supra*, as further amended by *L.* 1953, *c.* 288, *sec.* 1, effective July 27, 1953; *Beirn v. Morris*, 14 *N. J.* 529, 537 (1954). The only finding of fact made by the board of adjustment (concurred in by the city council) relating to the situation of the DeCapuas and their property was that the building was erected "under the belief that the use thereof was authorized." There is no record of any further finding upon the issue of special reasons, alleged in this case to be undue hardship, except the ultimate finding of that alleged circumstance. There was no stenographic record of the evidence introduced before the municipal bodies and little effort was expended by either the plaintiffs or the DeCapuas to supply this deficiency by introducing in the Law Division any testimony to augment the record to settle the evidence received by the board of adjustment. *Vide Beirn v. Morris, supra* (14 *N. J.*, at *pp.* 537–538). The record provided of the municipal proceedings shows only that the property was viewed by members of the board of adjustment, and that DeCapuas and "an objector," and their attorneys were heard. The city council added that the members of the city council were "personally familiar with the site in question and the surrounding neighborhood."

It is settled that the finding of the board of adjustment must be "substantially grounded in competent evi-

dence." *Stolz v. Ellenstein,* 7 *N. J.* 291, 295 (1951). There is no intimation that the information known to the members of the city commission or that disclosed to the members of the board of adjustment by their personal examination of the premises in question and the surrounding neighborhood was made known to the parties to the proceedings by disclosure on the record at the municipal level in the present matter. Ordinarily such action would result in a remand of the matter to the board of adjustment for a rehearing and determination upon the existing record with opportunity to the opposing parties to meet the information discovered or the personal knowledge expressed by the municipal bodies. *Stolz v. Ellenstein, supra* (7 *N. J.,* at *p.* 297); *Giordano v. City Commission of the City of Newark,* 2 *N. J.* 585, 589 (1949). Compare *Krauss v. A. & M. Karagheusian,* 13 *N. J.* 447, 461–464 (1953).

██ The DeCapuas sought to supplement the municipal record in the Law Division by introduction of evidence upon which they endeavored to sustain the variance. No evidence introduced in the Law Division indicates any reasonable ground for a claim of special reasons for variance, including the alleged ground of undue hardship. The evidence disclosed that the property is reasonably usable for residence purposes. The lot is not uniquely circumstanced, and although there was proof of some change in the general character of the neighborhood since it was originally zoned, there is no evidence of commercial uses therein. *Beirn v. Morris, supra* (14 *N. J.,* at *p.* 536). The DeCapuas knew of the zone plan when they constructed the garage, and their ostensible belief that the contemplated use thereof would not be violative of the zoning regulations may not be elevated to the dignity of proof of special reasons including the alleged undue hardship in the legal sense. Compare *Home Builders Assn. of Northern N. J. v. Paramus Boro.,* 7 *N. J.* 335, 343 (1951). And there is no contention that the general regulation is arbitrary or unreasonable. *Beirn v. Morris, supra* (14 *N. J.,* at *pp.* 534–536). To hold that mere misunderstanding of the zoning regulations is ground for relief there-

from would be to destroy the efficacy of zoning. A variant use of the DeCapua property on this premise, as Mr. Justice Heher observed in the *Beirn* case, *supra*, "* * * would necessarily be the basis for others and thus the disintegrating process would be set in motion. * * *" (14 *N. J.*, at *p.* 536). The zoning act does not contemplate variations which would frustrate the general regulations and impair the overall scheme which is set up for the general welfare of the several districts and the entire community. *Lumund v. Bd. of Adjustment of the Borough of Rutherford*, 4 *N. J.* 577, 585 (1950).

For these reasons we find that the judgment of the trial court correctly set aside the resolutions of the board of adjustment and the city council.

In passing we offer the observation that in despite of numerous decisions pointing up the necessity for the making of a record before the board of adjustment especially, and before the municipal governing body in appropriate matters under *R. S.* 40:55-39(*d*), as amended, *supra*, there remains a professed uncertainty at the Bar in this respect. In the light of this situation we deem it of general public importance to express our views on the subject in detail.

*R. S.* 40:55-38 requires a board of adjustment to "keep minutes of its proceedings showing the vote of each member upon each question" or absence or failure to vote and requires it to *"keep records of its examinations* and other official actions" (emphasis supplied). *R. S.* 40:55-44, as amended by *L.* 1952, *c.* 118, *sec.* 1, requires formal hearings before a board of adjustment, on notice to interested persons, with the right of interested persons to be represented by counsel. *R. S.* 40:55-37 authorized the chairman of the board of adjustment (or the acting chairman) to issue subpoenas and to administer oaths to witnesses. *R. S.* 40:55-37, *supra*, has been further implemented by amendment by *L.* 1953, *c.* 37, *sec.* 179, effective March 19, 1953, which ordains that the provisions of the County and Municipal Investigations Law (1952), giving increased weight to the powers of subpoena and examination of witnesses, *N. J. S.* 2A:67A-1 to

*N. J. S.* 2*A* :67*A*–4, shall apply to matters pending in the board of adjustment.

█ The zoning statute provides for hearings and determinations of a *quasi*-judicial nature before the board of adjustment. *Cf. Mazza v. Cavicchia*, 15 *N. J.* 498, 514 (1954). It seems that a calculated risk is assumed at the municipal level by failure to have a full and complete record taken down as a basis for the determination by the board of adjustment as well as the municipal governing body (in appropriate matters under *R. S.* 40 :55–39 (*d*), as amended, *supra*) for use on review proceedings. Refer to *N. J. S.* 2*A* :84–1, 2. The requirement for a full record of the evidence received by the board of adjustment has been expressed by the courts of this State. For example, see *Brandon v. Montclair*, 124 *N. J. L.* 135 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367, 368 (*E. & A.* 1940). In the *Brandon* case, *supra*, Mr. Justice Heher, in his opinion written in the former Supreme Court, referred to the hearing by the board of adjustment in variance matters as *quasi*-judicial in nature and adopted the view that "* * * judicial review would be reduced to an empty form if the requirement were relaxed that in the return of the proceedings the hardship and its occasion must be exhibited fully and at large. * * *" (124 *N. J. L.*, at *pp.* 146–147). In *Stolz v. Ellenstein*, *supra*, Mr. Justice Wachenfeld, speaking for this court, referred to the established rule that the findings of the board of adjustment must be "substantially grounded in competent evidence," and reiterated the governing principle that the presumption of validity does not attach to a determination of a board of adjustment where that determination rests on facts *dehors* the record (7 *N. J.*, at *pp.* 295–297). *Cf. Beirn v. Morris, supra* (14 *N. J.*, at *pp.* 537–538). Compare *Hasbrouck Heights Hosp. Ass'n v. Bor. of Hasbrouck Heights*, 15 *N. J.* 447, 455 (1954). The exercise of their functions by a board of adjustment and a municipal governing body in zoning matters must be in keeping with the principles of the enabling statutes. *Cf. Reid Development Corp. v. Parsippany-Troy Hills Tp.*, 10 *N. J.* 229, 238 (1952).

■ Insofar as legal advice is concerned, it seems that the statutory scheme is to keep a board of adjustment independent from the municipal governing body, see *R. S.* 40:55-36 as amended by *L.* 1948, *c.* 305, *sec.* 5, and therefore the municipal attorney might be precluded from advising the board of adjustment. The statute seems to give no power for appointment of an attorney for the board of adjustment or make provision for its expenses. However, in proceedings before the municipal governing body on a recommendation for variance, the municipal attorney's duty appears to require that he recommend to the governing body the remand of the matter to the board of adjustment where the findings or proofs in the record in support of the recommendation of the board of adjustment are deficient.

## II

■ A question involved on the present appeal is whether the trial court erred in permitting the introduction of evidence in the civil action which was not introduced before the board of adjustment. We find no error in this respect in the present case. There were issues tried in this civil action upon which the evidence in this category was properly introduced, namely the plaintiffs' claims for restraints against the DeCapuas and the plaintiffs' claims for damages. These issues were not, and could not have been, heard by the board of adjustment. However, this course does not supplant the need for a proper record of the proceedings before the municipal bodies, hereinbefore discussed. *Cf. Beirn v. Morris, supra* (14 *N. J.*, at *pp.* 537-538).

## III

Among the questions involved are questions relating to the availability of judicial relief in the form of prohibitory injunction (*i. e.*, restraints against use of their premises, including the six-car garage by DeCapuas, or against their use of the same garage for storage of limousines and flower cars for hire), mandatory injunction (*i. e.*, requiring the

DeCapuas to remove the six-car garage structure), and judgment (in the nature of the former prerogative writ of *mandamus*) requiring the municipal defendants to enforce the zoning regulations against the DeCapuas.

■ Relief of the categories above expressed may be incidental to a judgment vacating a variance, and is within the jurisdiction of the Superior Court, Law Division, in this type of civil action. *Garrou v. Teaneck Tryon Co.*, 11 *N. J.* 294, 304–305 (1953); *Yanow v. Seven Oaks Park, Inc.*, 15 *N. J. Super.* 73, 80–81 (*Ch. Div.* 1951), reversed on other grounds 11 *N. J.* 341, 362 (1953).

■ In the present case, as to the plaintiffs' claim for removal of the structure, the judgment of the Superior Court, Law Division, entered June 5, 1951 is *res adjudicata* against the claim for the reason that the issue was expressly raised between the same parties in that prior suit, the relief sought was not granted and the plaintiffs did not appeal therefrom. Insofar as the plaintiffs' claim for absolute restraint against use of their premises and the garage by the DeCapuas is concerned, the claim is too broad in as much as the structure was not in itself a violation of the zoning ordinance when erected and limited use of it and parking on their premises may be permitted under the presently existing zoning ordinance. Injunctive judgments are not granted in absence of clear and convincing proof. In the present case there is no evidence in the record indicating an intention by the DeCapuas to violate the judgment of the court. In the light thereof denial of *present* restraint against the DeCapuas' use of the structure in violation of the zoning ordinance is not erroneous. The plaintiffs have likewise failed to prove by clear and convincing evidence that the municipal authorities will be derelict in their duty to take appropriate steps to enforce the zoning regulations and statute in accordance with the judgment of the court.

■ Without reciting the evidence we further find that the plaintiffs failed to carry their burden of proof of damages occasioned by the use of the garage by the DeCapuas from time to time in violation of the zoning ordinance. The

proofs in this respect, where the evidence was not vague and unconvincing, related to the mere existence of the six-car garage structure. We reiterate that the structure was a valid one under the terms of the zoning ordinance in effect at the time of its construction. Under these circumstances whatever effect, if any, its existence may have on property values in the neighborhood is *damnum absque injuria*.

## IV

The remaining questions involved as stated by the parties either lack materiality on this review or are adequately disposed of by the conclusions hereinbefore expressed and we therefore state no direct determination thereon.

### CONCLUSION

The reasons expressed in this opinion call for an affirmance. However the judgment of the Superior Court, Law Division, was deficient in form in that it failed to express the determination of that court on the collateral issues. The judgment is therefore modified by the insertion of the following:

3. The claims of the plaintiffs for incidental relief as prayed for in the complaint are denied and judgment in favor of the defendants is rendered thereon.

And the judgment is further modified by renumbering the existing clause 3 as clause 4.

As modified herein, the judgment of the Superior Court, Law Division, is affirmed.

No costs on appeal will be taxed to any party.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, BURLING, JACOBS and BRENNAN—6.

*For reversal*—None.