41 N.J. Super. 549 (1956)
125 A.2d 562
CHARLES ALAN PHILLIPS AND ELEANOR C. PHILLIPS, HIS WIFE, PLAINTIFFS,
v.
BOARD OF ADJUSTMENT OF THE TOWN OF WESTFIELD, A MUNICIPAL CORPORATION, AND HERBERT P. ECKERT, SR. AND MARGARET D. ECKERT, HIS WIFE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 4, 1956.
*551 Messrs. Whiting, Moore & Phillips, attorneys for plaintiffs (Mr. Charles Alan Phillips, appearing).
Mr. Robert S. Snevily, attorney for defendant Board of Adjustment of the Town of Westfield.
*552 Mr. Jack J. Camillo, attorney for defendants Herbert P. Eckert, Sr. and Margaret D. Eckert (Mr. Irwin J. Silverlight, of counsel and on the brief).
HUGHES, J.S.C.
This is a proceeding in lieu of prerogative writ to challenge the validity of an exception granted by a municipal board of adjustment from one of the restrictive provisions of the Official Map and Building Permit Act of 1953. The plaintiffs (Mr. and Mrs. Charles Alan Phillips, referred to for brevity as Phillips) own and reside in the improved property at 862 Rahway Avenue, in Westfield, which is the southwest corner of Rahway Avenue and Maine Street. The latter street begins on Rahway Avenue and runs southwesterly about one-sixth of a mile to Seward Avenue, which runs parallel with Rahway Avenue. Maine Street is unimproved within the intendment of the statute referred to. The individual defendants (Mr. and Mrs. Herbert P. Eckert, referred to for brevity as Eckert) live at 850 Rahway Avenue. Having purchased two of the vacant lots on Maine Street to the rear and southwesterly of the Phillips property, known as 612 and 620 Maine Street, Eckert desired to build a one-family dwelling on the latter. By an interdiction applicable under the circumstances of this case, the statute forbids the issuance of a permit for such building on a lot which does not abut upon an improved street. The act, however, accommodates an exception under certain circumstances by the board of adjustment, which granted one here, and it is this exception which the plaintiffs seek to nullify in this action.
The matter came before the court on pretrial conference and was remanded to the board for two purposes:  (1) for the taking and transcribing of evidence to implement the mere excerpt of the minutes of the board which had been made available, and (2) for the determination of jurisdictional facts. Cf. Protomastro v. Board of Adjustment of City of Hoboken, 1 N.J. Super. 102 (App. Div. 1948), 3 N.J. Super. 539 (Law Div. 1949), 3 N.J. 494 (1950); Ward v. Scott, 11 N.J. 117 (1952). This record having *553 been completed and pretrial conference having narrowed the issues to the single question of the substantive propriety of the board's decision, the court viewed the premises as stipulated by counsel. The case submitted on the above record impels the court to determine in fact and conclude in law as follows:
Rahway Avenue is a well-travelled street with a 20-foot width of pavement and is presently in the course of widening and other improvement. Maine Street, laid out about 20 years ago, is dedicated and accepted, and not only appears on the tax map, but also is shown on the master plan of Westfield. The view of the court disclosed that the Phillips house is substantial, attractively landscaped and wooded to the rear; that Maine Street gives the true appearance of a "paper" street, as indicated on photographs in evidence before the board and as characterized by Eckert's testimony to the effect that it was "just a dirt street, half wooded"; that aside from corner lots at Rahway Avenue, the lots thereon are unimproved by dwellings or other structures; that it is overgrown to a substantial extent and in any case is unimproved, as stated, within the meaning of the statute, supra.
The Municipal Planning Act, N.J.S.A. 40:55-1.1 et seq., which became effective January 1, 1954, was designed to provide for the systematic planned development of a municipality, consonant with the promotion of its common interests, particularly in the field of its orderly growth in relationship to its future progress and needs. Planning thus has been viewed as a term of somewhat broader significance, in some respects, than zoning. Antonelli Construction, Inc. v. Milstead, 34 N.J. Super. 449 (Law Div. 1955). The Legislature also adopted, to be effective on the same date, the "Official Map and Building Permit Act of 1953," N.J.S.A. 40:55-1.29 et seq. These statutes are devoted to the same end, and their integration is so plain that both might well have been adopted (so far as their essential purposes are concerned, and apart from technical constitutional requirements) as parts of one statute. Both are designed to establish and secure a planned, as distinguished *554 from a haphazard, development of the community. In keeping with this concept of control of orderly future development, N.J.S.A. 40:55-1.39 provides that under circumstances as exist in this community and in this case, no building permit shall issue unless the lot abuts upon an improved street within the intendment of the act, which concededly was the situation facing Eckert here, and which led the building inspector to deny issuance of such permit. However, the act also provides:

"40:55-1.40 Appeal from decision as to issuance of permit

Where the enforcement of sections nine and ten of this act[1] would entail practical difficulty or unnecessary hardship, or where the circumstances of the case do not require the structure to be related to a street, the applicant for the permit may appeal from the decision of the administrative officer having charge of the issuance of permits to the board of adjustment in any municipality which has established such a board, or, in municipalities where there is no board of adjustment to the governing body, and the same provisions shall apply to such appeals and to such board or body as are provided in cases of appeals in respect to zoning regulations. The board may, in determining any such appeal, make reasonable exceptions and issue a permit subject to conditions that will assure adequate access for fire-fighting equipment, ambulances and other emergency vehicles necessary for the protection of health and safety and that will protect any future street layout shown on the official map or on a master plan of streets duly adopted by a planning board. Where such master plan of streets exists, the board of adjustment or governing body, as the case may be, shall refer the application to the planning board for report and recommendation before taking action. L. 1953, c. 434, p. 2190, § 11.
It is noted that this power to grant exceptions is correlated procedurally to the statute authorizing the board to deal with "appeals in respect to zoning regulations" and this integration refers to the powers of the board delineated in N.J.S.A. 40:55-39. It is obvious that the same general jurisdictional containments which apply to the board in its function under the zoning statute, must be understood as charting as well its authority under N.J.S.A. 40:55-1.40, supra. So interpreted, the over-all inhibitions applicable to *555 the zoning exception or variance, must limit equally the authority of the board to grant the "planning" exception. And so the board here must have apprehended, for it determined, inter alia, that:
"7. The proposed use would not be detrimental to the health, morals or public safety of the community.
"8. The proposed use would not be a substantial detriment to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance of the Town of Westfield."
The exception referred to in the Zoning Act, N.J.S.A. 40:55-39(b), has been said to concern the legislative process and to be allowable only where the conditions prescribed by the local legislative act, i.e., the ordinance, are met. Ward v. Scott, supra. By contrast, however, the conditions under which the planning exception, sub judice, may be granted are delineated by the statute itself, N.J.S.A. 40:55-1.40, supra. And such conditions fall into two categories. The first comprises the circumstances under which the board may act, i.e., "make reasonable exception[s]" to relieve the applicant from the strict application of the statute. The second type includes those conditions by which the board must circumscribe the exception which it grants. We have no concern here with this latter category, for the board determined, and as I find, on sufficient evidence, that a condition which it imposed (the construction by Eckert of a pavement road of carefully described specifications, below, however, the standard specifications for this community's streets, at least in regard to width) would "assure adequate access for fire-fighting equipment, ambulances and other emergency vehicles necessary for the protection of health and safety," and would "protect any future street layout shown on the official map or on a master plan of streets duly adopted by a planning board."
Another direction of the statute, the referral of the application to the planning board for report and recommendation, was also fulfilled. The planning board did not recommend that the instant exception be granted, but no *556 point is made that such favorable recommendation is necessary to the valid grant of an exception by the board of adjustment.
Thus the issue narrows to a scrutiny of the evidence and findings upon which the board predicated its action. In the grant of the "planning" exception, as in the use of the power described in N.J.S.A. 40:55-39, supra, I conclude that the rule is equally applicable that in any matter confided to its quasi-judicial discretion the local board of adjustment must make findings not only legally founded in the statutory criteria (Ward v. Scott, supra), but also "substantially grounded in competent evidence." Peterson v. Mayor and Council of Borough of Palisades Park, 127 N.J.L. 190 (Sup. Ct. 1941); Stolz v. Ellenstein, 7 N.J. 291 (1951); Dolan v. DeCapua, 16 N.J. 599 (1954); Skaf v. Zoning Board of Adjustment of Asbury Park, 35 N.J. Super. 215 (App. Div. 1955); Izenberg v. Board of Adjustment of City of Paterson, 35 N.J. Super. 583 (App. Div. 1955).
Since no circumstances exist in the case of this proposed dwelling which would "not require the structure to be related to a street" (one of the statutory bases for granting exception, supra), it is obvious that the "statutory criteria" here must be found in the expression of the statute,  "Where the enforcement * * * would entail practical difficulty or unnecessary hardship, * * *." The determinations of the board relevant to these criteria, and the general evidence supporting such findings, were:
"1. * * * no other practical access to said property is available."
(Lot 620 abuts only on Maine Street which is, as stated, completely unimproved, in fact overgrown, particularly between the Eckert lot and Seward Avenue.)
"3. Under the existing municipal ordinance, the Town of Westfield could not improve said street with paving and curbing for its entire length and assess the cost thereof against the adjacent property owners."
(The standard specifications for improvement on all Westfield streets, including paving, gutter and curbing, subject to some relaxation as to width by the planning board, apply to Maine Street. The vacant lots as laid out are 80 feet front on Maine Street and 100 feet deep. The estimated cost of improvement to meet the municipal requirements *557 for 269 feet from Rahway Avenue (which includes the depth of the Phillips lot, 109 feet, and the two Eckert lots of 80 feet each) would be in excess of $5,000, not including the cost of excavation. The disproportion between this cost and any reasonable potential value of the abutting vacant lots would forbid the assessment of the street costs against such lot owners as a local improvement. While Maine Street is listed on the future improvement program of the town, it was in evidence that such would not be likely for several years.)
"4. It would be an unnecessary hardship to compel the applicant to install full-width pavement and curbing for a distance of 269.84 feet at a cost exceeding $5,000.00, exclusive of any grading or excavation, which would be required to reach his property from the nearest presently improved street, namely Rahway Avenue."
(As stated, the evidence supported this estimate of cost.)
"5. The enforcement of such requirement would deprive him of the use of his said property because of the excessive cost of the improvement."
It may be noticed that Eckert acquired this lot on March 29, 1954, after the effective date of the statutes referred to, and this is not without significance in assessing the reality of hardship in the legal sense. Lumund v. Board of Adjustment of Borough of Rutherford, 6 N.J. Super. 474 (Law Div. 1949), affirmed 4 N.J. 577 (1950); Preye v. Board of Adjustment of North Bergen, 22 N.J. Super. 161 (App. Div. 1952); Beirn v. Morris, 14 N.J. 529 (1954); Dolan v. DeCapua, supra.
However, it may be conceded arguendo that the evidence supports the above determinations of fact and that the board was justified in finding from that evidence that the enforcement of the prohibitory section would in fact entail practical difficulty and unnecessary hardship to the landowner. These determinations meet the statutory terms as such, but I am convinced that consideration of these statutes in the perspective of their totality must import a deeper significance.
For instance, it is apparent that the owner of each of the many vacant lots on Maine Street could demonstrate with equal force the existence, as to him, of the precise "practical difficulty" and "unnecessary hardship" which the board *558 determined to exist in the case of Eckert. With respect to zoning, we know, for it has been held repeatedly, that "it is of the very nature of the constitutional and statutory zoning principle that all property in like circumstances be treated alike." Beirn v. Morris, supra. Thus it is that the statute vesting in a board of adjustment the power to grant variances from the strict application of the zoning regulation, N.J.S.A. 40:55-39(c) is replete with references to "exceptional" and "extraordinary" conditions giving rise to "peculiar and exceptional" practical difficulties or "exceptional and undue" hardship as the basis for exercise of the statutory power. And so it has been held that relief is available in this wise only where the lot is uniquely circumstanced and where the variance may be said to be grounded in conditions peculiar to the particular lot as distinguished from other property in the use district. General hardship, it is said, is relievable only by a revision of the general rule of the ordinance by the local legislative process or by the judicial process. Ackerman v. Board of Commissioners of Belleville, 1 N.J. Super. 69 (App. Div. 1948); Tzeses v. Board of Trustees of South Orange, 22 N.J. Super. 45 (App. Div. 1952); Beirn v. Morris, supra.
While it has been denied that this unique circumstancing because of extraordinary conditions of the property, is a necessary prerequisite to the use of the recommendatory power of the board under N.J.S.A. 40:55-39(d) (Mistretta v. City of Newark, 33 N.J. Super. 205 (Law Div. 1954)), it is nevertheless true that "special reasons," possibly apart from undue hardship, must exist to validate such action, which moreover is subject to discretionary power in the governing body to approve or disapprove the recommendation. Monmouth Lumber Co. v. Ocean Township, 9 N.J. 64 (1952).
But the statute sub judice imports finality of action in the board of adjustment, and not, as in N.J.S.A. 40:55-39(d), supra, a recommendatory function only. Despite this generous grant of power to the board, the Legislature did not require in specific terms that the "practical difficulty" would *559 be "peculiar and exceptional," nor that the "hardship" would be "exceptional" as well as "undue" as in the zoning statute referred to. Quaere: Is that meaning, requiring a determination of "unique circumstancing" of the land (or at least, "special reasons" relevant to the public good), implicit in the statute? If it is not, then it is clear that it lies within the power of the board (and in fact upon each similar showing of practical difficulty or unnecessary hardship, would be its duty) to grant exceptions from the general rule of the statute. Accordingly, a piecemeal addition of a section of the street, or, as here, a road below the standard specifications of the whole street, would have to be authorized upon each successive application. And thus would soon occur the chain reaction anathematized by our court decisions on "spot" zoning as the process which debilitates and destroys. It has been held to be the very essence of the zoning process  an attribute indispensable to its integrity  that relaxation of the general rule is to be had only for the relief of specific instances, peculiar in their nature. Beirn v. Morris, supra.
What is the essence, then, of the planning process? Must it not tend, as does the master plan envisaged by N.J.S.A. 40:55-1.12, toward the objective of accomplishing a "coordinated, adjusted and harmonious development of the municipality and its environs which will, in accordance with present and future needs, best promote health, safety, morals, order, convenience, prosperity and general welfare, as well as efficiency and economy in the process of development and the maintenance of property values previously established. * * *"? As in the case of the zoning plan, the community at large has an interest in the integrity and security of the planned growth of the municipality which depends importantly, inter alia, upon the general enforcement of N.J.S.A. 40:55-1.39, supra.
If the "practical difficulty" and "unnecessary hardship" referred to in this statute are interpreted to embrace a generality of hardship and difficulty, it is obvious that the general regulation (as in the case of zoning, Beirn v. Morris, *560 supra) would "in time be rendered abortive." But if, as I believe, the terms "practical difficulty" and "unnecessary hardship" are relative, and such relationship is to the setting of the progressive municipal planning fortified by the restriction of N.J.S.A. 40:55-1.39, supra, then the latter section need not face the certain attrition which would follow the unbridled use of the power granted in N.J.S.A. 40:55-1.40, supra. It is fundamental that statutes cannot be considered in a vacuum, but must be understood in their relation and interaction with other laws which relate to the same subject. They must be construed together with these related sections in order to learn and give effect to the true meaning, intent and purpose of the legislation as a whole. The courts should not construe a clause in a statute in such fashion as to charge the Legislature with deliberately rendering impotent the clear and unambiguously expressed intention of the whole act. Asbury Park Press v. City of Asbury Park, 19 N.J. 183 (1955); Appeal of New York State Realty and Terminal Co., etc., 21 N.J. 90 (1956). Thus the provisions of the Municipal Planning Act and those of the Official Map and Building Permit Act must be considered in pari materia and, so considered, all may be effective, for, as in the case of zoning, the grant of exceptions under extraordinary circumstances of difficulty and hardship does not, in contemplation of law, affect the integrity of the general regulation.
Assessed by these standards, the determination of facts of the board of adjustment does not support the exception which it granted, for the hardship and difficulty, which it determined to exist in the case of the Eckert lot, burden equally the other lots in the general area. The planning power, like the zoning power, may not be exerted in the service of private interests, but rather must conduce to the public good. I must, therefore, enter judgment for the plaintiffs, invalidating the exception granted, and will sign an order to that effect upon presentation.
NOTES
[1] Sections 40:55-1.38 and 40:55-1.39."