WAYMOUTH CORPORATION, Petitioner, *v.* PUERTO RICO
PLANNING BOARD, Respondent.

No. 35.   Submitted January 18, 1958.—Decided July 23, 1958.

*Córdova & González* and *Robert E. Schneider, Jr.* for petitioner.
*Rafael R. Fuertes* and *A. Sandín del Manzano* for respondent.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

Waymouth Corporation filed before the Puerto Rico Planning Board a declaration of its intention to subdivide a lot owned by them, located in the Santurce section of the city of San Juan. The Board disapproved the subdivision requested on the following grounds: "The aforementioned lots sought to be segregated in this case are located adjoining the Condado lagoon and besides lacking sidewalk and sewer facilities, they will be almost wholly taken up by the right-of-way of the projected North Avenue, in accordance with the official Map for Section 5–16 approved January 12, 1951, in accordance with the Record Plan of Major Thoroughfares for the San Juan Metropolitan Area, San Juan, Puerto Rico 2–A."

Petitioner moved for reconsideration of said decision and in its petition informed that it was willing to furnish any bond for the amount that the Planning Board wished for the construction of sidewalks and sewers. At the hearing it also proved that only one of the proposed lots would be affected by the North Avenue layout, and according to the plan prepared by the Department of Public Works itself, the only lot affected by North Avenue would be reduced by 166 square meters, but even after the reduction, it would still have an area of 608.21 square meters.

The Planning Board dismissed the motion for reconsideration on the following grounds: (1) that the lots to be subdivided are affected by the right-of-way of North Avenue in accordance with the Official Map for the same in its Section 5–16, adopted and approved pursuant to the provisions of Act No. 213 of 1942, as amended, after holding different public hearings; (2) that a great portion of said land is

marked "P" (for public use) according to the Zoning Map, adopted and approved also after holding several public hearings; (3) that the proposed lots would lack sidewalk and sewer facilities; (4) that there exists a controversy over the land in question between the petitioner and the Commonwealth of Puerto Rico, since part of the same which are affected by the Zoning Map are considered as land gained from the sea and said controversy is to be settled by the state courts of justice; (5) that the action of the Board in this case constitutes a sound use of the discretion granted by Act No. 213 of 1942, as well as by the regulations applicable to the case at bar.

██ If the land to be subdivided is affected by the layout of North Avenue, it is a simple question of fact. We observe that in the Board's decision it is not determined in what form and to what point said land would be affected, and how this would make the subdivision sought impossible. On the contrary, what the petitioner now alleges before us is that an examination of the layout of the avenue reveals that it shall not affect substantially the subdivision of the two lots sought by the petitioner. This contention is based on the official construction plan itself of said avenue. We found nothing in the judgment roll on which to determine whether this conclusion is really supported by the evidence considered by the Board. In view of this situation, we believe that the most advisable thing is to remand the case to the Board so that it may determine, after examining the evidence, if the layout of North Avenue entirely prevents the subdivision of the remainder of said land.

██ The fact that a great portion of said land is reserved for public use does not mean that the right of ownership over the same is wholly suspended. The Board itself admits before us that the reserving of specific land for public use does not imply a freezing of the right of ownership. If this is so, in a case like the present, the Board should determine whether because of the lapse of time or the improba-

bility that said land be utilized for an immediate public end or purpose, the test of reasonableness established by our case law would support their denial of any subdivision hereof, *Segarra* v. *Planning Board*, 71 P.R.R. 139, 142–43 (Snyder 1950). By this test it is intended to avoid the owner's speculation with public necessity, raising the value of condemnation or forcing the State to anticipate its plans, but at the same time to protect the owner from any inertia or extravagance of the police power of the State. To consider the simple reservation of land for public use as an indeterminate refusal, is not sufficient reason to deny a petition for subdivision, particularly in a case like this, in which possibly not all the land comprised in the petition is necessary for public use. The most advisable thing at this moment is to remand the case so that the Board may determine not only the reasonableness of the time that has elapsed from the declaration of the reserve for public use, without the State having begun the condemnation proceeding, but also how much longer will the condemnation proceeding last, to enable this Court to determine, as a question of law, if the refusal to allow the owner to use *its* property, results arbitrary, unreasonable or confiscatory. $\times$

As to the point that both lots would lack sewers and sidewalks, we do not know if it is a question of area or lack of construction of said facilities. If it is a lack of space a study would have to be made to determine if the strict application of the Board Regulations in such circumstances would be equivalent to a condemnation without due compensation, or a confiscation of the petitioner's right. Precisely to avoid these constitutional problems the Act and the Regulations provide that the Board shall grant variances, § 26 of the Planning Act, Act No. 213 of May 12, 1942, as amended, 23 L.P.R.A. § § 1 and 28, and § 9 of Regulation No. 4 of 1955, p. 19; *Otto* v. *Steinhilber*, 24 N.E.2d 851, 852–53, (1939, Finch); *Beirn* v. *Morris*, 103 A.2d 361, 364, (1954, Hetter); *Yokely, Zoning Law and Practice*, Vol. 1

(2d ed.) pp. 324, 352. If it is a lack of construction of said facilities, we do not think it is fair to bind the owner of said land to construct said facilities with anticipation without having the assurance that its subdivision will be accepted. The Board could restrict the subdivision permit in this sense or accept the bond that the petitioner proposed in its petition for reconsideration. For a final determination on the first aspect of the question—lack of area—or of the second aspect of the question—lack of construction facilities—the best thing is to remand the case to the Board.

■ As to the possible controversy between the State and the petitioner over some lands adjoining the Condado inlet, which might result in property of public domain, since there is an official survey plan prepared by the State itself, dated May 22, 1951, rather than a conflict of titles, the case is reduced to a simple comparison of plans to determine the portion to be subdivided. Precisely, what the petitioner alleges before us is that after eliminating the part taken up by North Avenue as well as the part adjoining the lagoon, the property to be subdivided has sufficient area to support its petition for subdivision. The general determination made by the Board as to the existence of said controversy, was made without giving the petitioner opportunity to present its evidence on this point. This results contrary to the best administrative practice. Today we could say they are contrary to the very Rules of Procedure in Administrative Hearings adopted by the Board on May 15, 1957. See Rule 16:00 as to the reception of evidence.

As to whether its actions in this case fall within its discretionary powers, we reserve any judgment on this point until the case is heard on its merits.

The decisions entered till now must be reversed and a new hearing is ordered to make the specific determinations previously outlined.