JOHN E. TOMKO, *ET AL.*, PLAINTIFFS-APPELLANTS, v. WILLIAM VISSERS, MAYOR, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued March 5, 1956—Decided March 26, 1956.

228

230

*Mr. Joseph C. Glavin* argued the cause for the plaintiffs-appellants.

*Mr. Edward Sachar* argued the cause for the defendants-respondents (*Messrs. Sachar, Sachar & Bernstein,* attorneys for defendant-respondent, Green Brook Swimming Club; *Mr. John Andrew Reid,* attorney for defendant-respondent, Green Brook Township).

The opinion of the court was delivered by
BURLING, J. This appeal stems from the Superior Court, Law Division, which affirmed the grant of a variance by the Township Committee of Green Brook Township, Somerset County, New Jersey, on the recommendation of the local board of adjustment pursuant to *N. J. S. A.* 40:55-39(*d*). We certified the cause prior to an appellate review below.

Green Brook Township is a locale predominantly residential in character. Its zoning ordinance divides the territory into four districts: Residence Zone A, Residence Zone B, Business Zone and Light Manufacturing Zone. The use restrictions governing the residential zones permit dwellings or tenements, boarding houses and hotels, churches, schools, libraries and public museums, hospitals, sanitariums, cemeteries, certain philanthropic institutions, farming, greenhouses, buildings housing public utilities (with certain restrictions), and clubs whose chief activity or service is not carried on as a business.

The property in question is a 12-acre tract of vacant land located in the Residence Zone A. It is owned by George and Aurelia Carlson who have contracted to sell the property to Jack Liddy, a representative of the Green Brook Swimming Club, conditioned upon a grant of the variance in question. The Swimming Club is an unincorporated association presently composed of five members. The design of the enterprise, so far as discernible from the record, is to construct a swimming pool for the enjoyment of club members. Membership will be restricted to some 300 families upon an annual dues basis of $250-300. It represents a business venture.

The doubt created by the ordinance in prohibiting clubs "the chief activity of which is a service carried on as a business" from the residential zone caused the club representative, Jack Liddy, to apply for a variance to the board of adjustment. (The record does not indicate that a building permit was applied for.) Notice was served upon adjoining property owners, R. S. 40:55-44, and the board held meetings on the 5th and 6th of January, 1955. The hearing was accorded on the first evening. Four of the five board members were present. The minutes of the board (which were not before the trial court for reasons subsequently noted) indicate that the applicant's sole presentation was a "layout map" and an "artist's sketch." The board discussed the matter with various members of the public who were present and no objections to the application were voiced at that time.

On the following evening the board assembled to vote on the application. Four members were present, one of whom had not attended the hearing. The vote was 3-2 to recommend to the township committee that the variance be granted. One member was polled by telephone. Thereafter, the board addressed a letter of transmittal to the township committee which discloses the following statement:

"In considering this request the following points were discussed.
1. The land is low and not too suitable for a home development.

2. The use of the land as proposed would, if carried out as presented, improve the area.

3. That, if granted, a statement of operations should be required which would be binding.

4. That, if in the opinion of the Police Dep't, an officer were required during certain hours such officer should be paid for by the club.

5. Residents adjoining the property appeared to be in favor of the installation.

6. No objections were presented at the hearing.

7. Such an installation, while providing certain tax benefits, would in no other way benefit the community.

8. The operation would be essentially a business use of the property."

The township committee approved the recommendation on January 17, 1955, following a public hearing. The minutes of that meeting reflect that residents of the township both favored and opposed the variance. The applicant presented no evidence. A resolution was passed placing certain limitations upon the club operation and the findings of the board of adjustment were approved and incorporated therein.

On February 10, 1955 the plaintiffs, all property owners in Green Brook Township, requested a rehearing of the resolution, urging, *inter alia*, that the township was not fully aware of the community regard in the matter, that no legal hardship had been shown and that the variance would substantially impair the zoning structure. In March the township committee reaffirmed its position by resolution, but plaintiffs had already instituted an action in lieu of prerogative writ by filing a complaint in the Superior Court. In view of the pending litigation the committee saw fit to incorporate further conclusions in support of its action:

"The proposed plans for the use of the premises would provide ample off-street parking."

"That the use of said premises as a club-type swimming club and facilities, with provisions for off-street parking will not create an undue traffic, fire or health hazard."

"The members of the Township Committee are familiar with the premises under consideration."

"That the use of said premises as a club-type swimming club and facilities would not be detrimental to the health, morals or public safety of the community."

"That the use of said premises as a club-type swimming club and necessary facilities would not be detrimental to the public good and would not substantially impair the intent and purpose of the zone plan and zoning ordinance."

When the matter reached the trial court the complaint was dismissed as to the board of adjustment upon motion of the defendants and accord of the plaintiffs because it was filed 30 days after that body had recommended the variance, see *R. R.* 4:88–15(*b*)(3). Upon the basis of the dismissal the record of the proceedings before the board of adjustment was not presented to the trial court. In the pretrial order the parties stipulated that various items of documentary evidence which had not been before the board of adjustment or the township committee were to be submitted to the trial court. During the course of the judicial hearing the Green Brook Swimming Club introduced as witnesses two real estate brokers, an engineer, a building contractor, and a zoning expert; plaintiffs produced an engineer and several local property owners opposed to the variance. None of these persons had been produced as witnesses before the board of adjustment or the township committee.

The cause was heard by the trial court on September 12 and 13, 1955. At the conclusion of the presentation the court found that the plaintiffs had not overcome the presumption accorded the administrative determination and dismissed the complaint. In the course of the oral opinion it was remarked:

"Ordinarily, this type of matter would come up before the Court on the record below, but for reasons unknown to me and fixed by the pretrial order, it was not to be and was not the procedure followed here."

Plaintiffs contend on this appeal that the findings of the board of adjustment are not grounded in evidence; that even if properly supported the findings are legally insufficient to support the grant of a variance; that the trial court erred in hearing the case *de novo*.

Defendants urge an affirmance because the board of adjustment is an "essential" party to the action and the complaint

has been dismissed as to it; that the court has no jurisdiction over the Green Brook Swimming Club because none of its members were made party defendants; that plaintiffs are estopped from questioning the procedure in the trial court; and that plaintiffs have failed to sustain the burden of proof in showing an abuse of discretion by the local authorities.

It is unnecessary to extensively consider the procedural aspects in joining the board of adjustment and the individual members of the club as parties defendant. Motions were made below to dismiss the complaint upon the first two grounds urged by defendants here. The trial court denied the motions, being of the opinion that neither the board nor the club were indispensable parties. No cross-appeal has been filed from these rulings, *R. R.* 1:2–6 and 2:2–5.

■■ The dismissal of the complaint against the board of adjustment was improper. Both parties consented to the order under the erroneous assumption that a review of the board's action could not be obtained because the complaint was filed more than 30 days following the recommendation to the township committee. *R. R.* 4:88–15(*b*)(3). Proceedings in lieu of prerogative writ may not be commenced until the right accrues, *R. R.* 4:88–15(*a*). Under the variance procedure of *N. J. S. A.* 40:55–39(*d*) the governing body, by resolution, must either approve or disapprove the action of the board of adjustment if a variance is recommended. The resolution of the governing body and not the recommendation of the board is the final act of the local authority upon which the right to judicial review arises, *Brandon v. Board of Commissioners of Town of Montclair*, 124 *N. J. L.* 135, 138–139 (*Sup. Ct.* 1940), affirmed 125 *N. J. L.* 367 (*E. & A.* 1940); *Ackerman v. Board of Commissioners*, 1 *N. J. Super.* 69, 73–74 (*App. Div.* 1948), but otherwise, of course, where the board declines to make a recommendation. *Crescent Hill, Inc., v. Borough of Allendale*, 118 *N. J. L.* 302, 305 (*Sup. Ct.* 1937).

■ Completely aside from the error in dismissing the complaint against the board of adjustment, the minutes of

its proceeding should have been a part of the record submitted to the trial court. If the governing body chooses to accept and confirm the findings and conclusions of the board of adjustment, it may do so by passing a resolution to that effect. On the other hand, the governing body is free to draw different or additional conclusions from the facts as determined by the board. *Monmouth Lumber Co. v. Ocean Township*, 9 *N. J.* 64, 75–76 (1952). In either event, the record made before the board is essential to an enlightened determination by the governing body. See *Dolan v. De-Capua*, 16 *N. J.* 599, 613 (1954). And because it may contain the sole recital of the evidence and the basic findings thereon upon which the variance has been recommended and approved it retains its importance on judicial review. The purpose of the writ of *certiorari* was to bring before the court an extended record of the proceedings before the lower tribunal, *Brandon v. Board of Commissioners of Town of Montclair, supra,* 124 *N. J. L.,* at *page* 147, and we therefore shall consider the minutes of the hearing before the board of adjustment as a part of the record before us. *R. R.* 1:6–6.

Inclusion of the record made before the board of adjustment does not require that the board be denominated an indispensable party. It may be presumed that the governing body has obtained custody thereof where a variance is recommended. (*Cf. Second Reformed Church v. Board of Adjustment,* 30 *N. J. Super.* 338, 340 (*App. Div.* 1954), where the variance was *granted* under *N. J. S. A.* 40:55–39(*c*).) The resolution of the governing body constitutes the grant or denial of a variance recommended under subsection (*d*) and an effective judgment is possible where that body is the only party defendant. Accord, *Second Reformed Church v. Board of Adjustment, supra.* See 2 *Schnitzer & Wildstein, N. J. Rules Service,* AIV 258. The better practice, however, is to make the board of adjustment a party defendant since it is a proper party, and thereby avoid the procedural entanglements exemplified by the matter *sub*

*judice.* Trial courts may do so upon their own initiative where plaintiffs have failed to act. *R. R.* 4:32–1.

■ We have no difficulty with the court's jurisdiction over the members of representatives of the swimming club, whose counsel has actively engaged in this litigation. Any defect in the matter of summons has been waived through a general appearance, *R. R.* 4:4–6. See 2 *Schnitzer & Wildstein, supra,* AIV–68 *et seq.*

We do not reach the merits of the variance in question. A reversal of the judgment is required due to procedural difficulties.

■■ A zoning ordinance is presumed to be reasonable and fair in its impact upon the territory encompassed within its terms and the burden falls upon the property owner who seeks relief from the restriction to prove the statutory requisites which justify alleviation. *Home Builders Ass'n of Northern New Jersey v. Paramus Borough,* 7 *N. J.* 335, 343 (1951); *Cobble Close Farm v. Board of Adjustment,* 10 *N. J.* 442, 451 (1952). The Legislature, by statutory directive, has placed the responsibility upon local boards of adjustment to grant a hearing to the applicant, *N. J. S. A.* 40:55–39(*a*), and, depending upon the nature of the relief sought, to grant or deny a variance, *N. J. S. A.* 40:55–39(*c*), or recommend or decline to recommend the application to the governing body, *N. J. S. A.* 40:55–39(*d*). The design is to accord the board an expert discretion, *Schmidt v. Board of Adjustment,* 9 *N. J.* 405, 423 (1952), which generally serves to confine the judicial function to a review of the record made before the local authority. *Izenberg v. Board of Adjustment,* 35 *N. J. Super.* 583, 588 (1955). But *cf. R. R.* 4:88–13; *Cullum v. Board of Education,* 15 *N. J.* 285, 294 (1954).

■ Boards of adjustment have the statutory equipment necessary to fulfill the responsibility. The chairman has the power to issue subpoenas for the attendance of witnesses and the production of records, and may administer oaths. *R. S.* 40:55–37. Expenses of the board may be met through appropriation by the governing body and it may

employ an attorney and clerical personnel necessary to fulfill its function. *N. J. S. A.* 40 :55–36.1, 36.2 (*L.* 1955, *c.* 126). See *Dolan v. DeCapua, supra,* 16 *N. J.,* at *page* 613. The board is directed to keep a record of its official actions and minutes of its proceedings, *R. S.* 40 :55–38, which become a public record, and, as previously noted, this should be forwarded to the governing body where a variance is recommended.

The statute does not define rules of procedure for the applicant to follow in the presentation of its case, but the rule-making power given the board (*R. S.* 40 :55–37) contemplates that certain standards of guidance will be promulgated to insure an orderly hearing. A rigid formality is neither practical nor necessary. 2 *Metzenbaum, Law of Zoning,* 870 (1955). The swearing of witnesses is not mandatory, *R. S.* 40 :55–37; *cf. Schaible v. Board of Adjustment,* 134 *N. J. L.* 473, 479 (*Sup. Ct.* 1946), nor does the statute require that a stenographic record be taken. Accord, *Berdan v. City of Paterson,* 1 *N. J.* 199, 205 (1948). We make the observation, however, that the regard accorded to proceedings before the municipal bodies is considerably enhanced where oaths are administered to witnesses for the applicant and for the opposition and a stenographic record is made. See *Dolan v. DeCapua, supra,* 16 *N. J.,* at *page* 612. The desire of the Legislature is not dissimilar to our own. *N. J. S. A.* 40 :55–36.2 and 37; *N. J. S.* 2A :67A–1 *et seq.*

The primary responsibility of the applicant is to supply competent and credible evidence to apprise the board of the nature and degree of the zoning burden sought to be alleviated through the variance procedure, and to demonstrate that the contemplated use of the property will not substantially impair the intent and purpose of the zoning plan as a whole nor be inconsistent with any of the purposes of zoning as defined by the Legislature in *R. S.* 40 :55–32. Accord, *Lumund v. Board of Adjustment,* 4 *N. J.* 577, 586 (1950) ; *Preye v. Board of Adjustment,* 22 *N. J. Super.* 161, 176 (*App. Div.* 1952), certification denied 11 *N. J.* 328 (1953). *Cf. Ward v. Scott,* 11 *N. J.* 117, 125–126 (1952) ;

*Ranney v. Istituto Pontificio Delle Maestre Filippini*, 20 *N. J.* 189, 199 (1955).

The responsibility of the board is then to weigh the evidence submitted and reach basic factual determinations. These basic findings, in essence, serve to reflect the board's conception of the true facts in the evidence presented. From the basic factual determinations the ultimate facts are to be derived. An affirmative or negative conclusion that the variance will not substantially impair the intent and purpose of the zoning plan nor be inconsistent with the various purposes of zoning (*R. S.* 40:55–32) would represent an ultimate finding, and from this the recommendation or rejection of the application will follow. *New Jersey Bell Telephone Co. v. Communications Workers*, 5 *N. J.* 354, 374–377 (1950); *Davis, Administrative Law*, 531–537 (1951). The pattern is a general one, flexible in fulfillment, but sufficiently exacting to require that a resume of the evidence be recorded, as well as the basic and ultimate factual determinations. *Brandon v. Board of Commissioners of Town of Montclair, supra*, 124 *N. J. L.*, at *page* 147; *Ward v. Scott, supra*, 11 *N. J.*, at *pages* 128–129; *Izenberg v. Board of Adjustment, supra.*

The Green Brook Swimming Club offered a "layout map" and an "artist's sketch" at the hearing before the township board of adjustment. From all that appears this constituted the presentation of its case, with the possible exception of a petition signed by 16 persons favoring the application. The proceeding was at best a discussion of the proposed development with interested members of the public, one of whom opined that the land was swampy after a rain and not suitable for residential development, and one who inquired about the disposal system which would be installed. Where the applicant fails to fulfill his responsibility in setting before the local agency the evidence necessary for it to exercise a seasoned discretion the failure is fatal; the board has no power to recommend a variance. *Peterson v. Mayor and Council of Borough of Palisades Park*, 127 *N. J. L.* 190 (*Sup. Ct.* 1941). An informal dis-

cussion is not a substitute for competent and credible evidence. *Montgomery Engineering Co. v. Jersey City,* 134 *N. J. L.* 414 *(Sup. Ct.* 1946); *G. G. A. Realty Corp. v. Board of Adjustment,* 135 *N. J. L.* 427 *(Sup. Ct.* 1947). (We pause to note that personal knowledge of the members of the local bodies may be taken into consideration, but this must be set forth in the record in order to sustain basic or ultimate conclusions founded thereon. *Giordano v. City Commission of City of Newark,* 2 *N. J.* 585 (1949).) The conclusions reached by the board having any legal pertinency to a granting of the variance are not grounded in evidence.

 The resolution resulting from the meeting of the township committee merely incorporated the conclusions reached by the board of adjustment and for this reason it is equally fatal. After court action was initiated the township committee met again to make additional findings, all of which lack fortification in evidence. It may be argued that an exception in this respect is the finding that off-street parking as reflected by the plans for the enterprise would obviate an undue traffic hazard. This finding, standing alone, is not sufficient to support the variance. The second resolution (which was supplementary to the first) was passed subsequent to the institution of the proceeding in lieu of prerogative writ and technically is not under attack, it was admitted into evidence before the trial court through stipulation in the pretrial order and is so related to the original proceedings before the board and township committee that it should also be set aside as hereinafter noted. See *R. R.* 1:5–4.

 Finally, upon the advent of a judicial review, the representatives of the swimming club prepared their case in seeking a variance. Plaintiffs have taken no issue with this procedure until now. Both parties were content to have the trial court hear the matter in a *de novo* fashion, a role it reluctantly assumed, but pursued in view of the pretrial order. Defendants urge an estoppel against plaintiffs.

The trial of the cause represents an exercise of original jurisdiction which is bestowed upon the local bodies under the statutory scheme, *N. J. S. A.* 40:55–39(*d*); *Oliva v. City of Garfield*, 1 *N. J.* 184, 189–190 (1948). The judicial function is confined to a review of the agency action and to correct any abuse of the delegated discretion, 165 *Augusta Street, Inc., v. Collins*, 9 *N. J.* 259, 265 (1952); *Schmidt v. Board of Adjustment, supra*, 9 *N. J.*, at *page* 423, and the allocation of responsibility may not be displaced by stipulation of the parties, *People ex rel. Hudson-Harlem Valley Title & Mortgage Co. v. Walker*, 282 *N. Y.* 400, 26 *N. E.* 2d 952 (*Ct. App.* 1940).

The judgment is reversed and the cause remanded for entry of judgment vacating the resolutions of the Green Brook Township Committee. Although the action against the board of adjustment was dismissed, the effect of its statutory recommendation in the action of the township committee was a nullity. This reversal is without prejudice to the Green Brook Swimming Club to institute new proceedings before the Green Brook Board of Adjustment.

No costs will be taxed to any party.

WACHENFELD, J., concurring in result.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.